IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD FRANTZ,<br><br>　　Plaintiff,<br><br>v.<br><br>JETNET CORPORATION,<br><br>　　Defendant. | Case No. 23-1556<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Richard Frantz, by and through his attorney, David M. Manes, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act of 1990 ("The ADA"), 42 U.S.C § 12203 (a) *et seq.*, the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 623, and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff alleges that he was wrongfully terminated from his position due to his age and disability in violation of the ADA, the ADEA, and the PHRA.

### II. Jurisdiction and Venue

2. This action arises under the ADA, ADEA, and PHRA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Western Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore,

this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under the ADA and ADEA on June 6, 2022, under charge number 533-202-01965. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on June 7, 2023. This Complaint has been filed within ninety (90) days of the Plaintiffs receipt, thus making this action timely. *See Exhibit 2*.

### III. Parties

7. Plaintiff, Richard Frantz ("Plaintiff"), is an adult individual with a primary address located at 175 Baker Drive, Pittsburgh, Pa 15237.

8. Defendant, JetNet Corporation ("Defendant"), is a Pennsylvania business corporation with a regular place of business located at 79 North Industrial Park, 505 North Drive, Sewickley, Pa 15143.

### IV. Facts

9. Plaintiff began working for Defendant in or around 2008.

10. Plaintiff worked for Defendant for approximately 14 years as a specialized mechanic for specific types of machinery that the Defendant used.

11. At the time of this incident, Plaintiff was 68 years old and had been deaf for approximately 30 years.

12. Donald Satore, the previous owner of Defendant, retired in 2022, which caused a management turnover.

13. During the time that Donald was the owner of the Defendant, Plaintiff received praise for the work he did.

14. At a Christmas party held by Defendant, Donald said that "I hope Rich never retires because he is so good at his job."

15. William Satore, Donald's younger brother, took over the company upon Donald's retirement.

16. William went from being the Vice President of the Defendant to Vice Chairman of the Board/CEO.

17. Upon William taking over Defendant, Plaintiff had a conversation with William.

18. During this conversation, William told Plaintiff that "we're surprised you haven't retired yet."

19. After the change in management took place, numerous people were given new titles.

20. On or about April 11, 2022 additional employees were hired.

21. After bringing in the new employees, William said "We brought in some new blood."

22. One of the new hires, Chris Last Name Unknown, was under the age of 40 at this time.

23. After Chris was hired, Plaintiff asked his direct supervisor, Craig Hartle, if he was being replaced.

24. Hartle said Plaintiff was not being replaced.

25. Plaintiff asked if he was still in charge of the maintenance, to which Hartle replied "No, Chris is."

26. On or about May 6, 2022, Plaintiff was going through a parts catalog.

27. Plaintiff was approached by Ron Howard, the new president of Defendant.

28. Howard was screaming at Plaintiff, but Plaintiff could not make out what was being said due to his disability of being deaf.

29. Plaintiff couldn't figure out what was being said so he became very intimidated by the situation.

30. Plaintiff eventually figured out that Howard was yelling at Plaintiff to "put the book down and fix that machine".

31. Plaintiff immediately fixed the machine upon understanding the directive.

32. After the encounter with Howard, Plaintiff was feeling very nauseous.

33. Hartle was gone for the day, so Plaintiff excused himself for the remainder of the day to recover from the incident.

34. Plaintiff did not tell Howard before leaving because he was afraid of Howard's reaction.

35. Plaintiff and another coworker, Josh Zorch, frequently left early on Fridays.

36. Leaving early on Fridays had never been a problem in the past and neither have ever received disciplinary action or a reprimand for this.

37. Later, Plaintiff received a text message from Howard stating that Plaintiff's resignation was accepted because he didn't finish his shift.

38. Plaintiff had no intention of resigning and had just left early, like himself and Zorich often did.

39. Plaintiff had the full intention of returning to work for his next scheduled shift.

40. Later the same day, Plaintiff received a letter from the CFO, Michael Stitznagel, accepting his resignation.

41. Plaintiff never received any warnings or disciplinary action prior to his termination.

## COUNT I
### Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA") of 1990

42. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

43. Defendant constitutes as an "employer" within the meaning of the ADA.

44. Plaintiff was an employee with a disability within the meaning of the ADA relating to his being deaf.

45. The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Plaintiff must prove: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004); Lackey v. Heart of Lancaster Regl. Med. Ctr., 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

46. Plaintiff's disability was known to Defendant.

47. Plaintiff was terminated the day after the incident where Howard was screaming at him to fix the machine.

48. The termination is a direct correlation to being screamed at by Howard.

49. Having a disability is protected under law.

50. The core purpose of the ADA is to help and protect those who need it, like Plaintiff.

51. Plaintiff's unlawful termination is an adverse employment action.

52. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

53. When viewed in its entirety, the actions by Defendant can only be viewed as retaliatory against Plaintiff for not being able to hear Howard instructing Plaintiff to fix the machine that he didn't know was in need of repair.

54. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT II
**Disability Discrimination in Violation of the Pennsylvania Human Relations Act ("PHRA")**

55. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

56. Defendant constitutes an "employer" within the meaning of the PHRA.

57. Plaintiff was an employee with a disability within the meaning of the PHRA.

58. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. Bialko v. Quaker Oats Co., 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim.").

59. As previously stated, in violating the ADA, Defendant hereby violated the PHRA.

60. Plaintiff was disabled in that he suffered from being deaf.

61. Defendant was aware that Plaintiff was deaf.

62. Plaintiff believes, and therefore avers, that he was discriminated against on the basis of his disability in violation of the PHRA.

63. As a direct and proximate result of Company's discriminatory actions in violation of the PHRA, Plaintiff has lost wages and other economic benefits.

64. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT III
### Age Discrimination in Violation of the Age Discrimination in Employment Act

65. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

66. Defendant paid the Plaintiff to perform services, within the regular course of its business, in accordance with a regular payroll schedule. Defendant is therefore an employer, and the Plaintiff an employee, within the meaning of the ADEA.

67. Plaintiff is over forty (40) years of age at all times relevant to this Complaint, and is of a protected class pursuant to the provisions of the ADEA.

68. Plaintiff was qualified to do his job as a specialized mechanic.

69. Defendant engaged in unlawful discrimination in violation of the ADEA by discriminating against Plaintiff due to his age.

70. During his employment, Plaintiff was no longer in charge of maintenance as he was replaced by a younger, recently hired employee.

71. Specifically, William Satore stated "we're surprised you haven't retired yet." Satore also stated "We brought in some new blood."

72. Another specific instance is when Harle told Plaintiff he was not being replaced by the newer, younger employee, Chris. However, Plaintiff was no longer in charge of maintenance, Chris would be.

73. He was terminated shortly after these comments were made.

74. Plaintiff believes, and therefore avers, that he was terminated on the basis of his age.

75. As a direct and proximate result of Defendant's discriminatory actions in violation of the ADEA, Plaintiff has lost wages and other economic benefits.

76. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT IV
### Age Discrimination in Violation of the PHRA

77. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

78. The analytical framework used to evaluate a claim under the Pennsylvania Human Relations Act ("PHRA") is effectively indistinguishable from that under Title VII. Id.

79. Because Plaintiff is able to state a prima facie case for age discrimination as well as retaliation under Title VII, so too will he be able to state such a claim under the PHRA

80. Defendant is an employer within the meaning of the PHRA.

81. Plaintiff was an employee within the meaning of the PHRA.

82. Plaintiff experienced comments about him being able to retire.

83. Defendant paid the Plaintiff to perform services, within the regular course of its business, in accordance with a regular payroll schedule. Defendant is therefore an employer, and the Plaintiff an employee, within the meaning of the ADEA.

84. As his employer, Defendant had a duty to provide Plaintiff with a discrimination free workplace.

85. Plaintiff is over forty (40) years of age at all times relevant to this Complaint, and is of a protected class pursuant to the provisions of the ADEA.

86. Plaintiff was qualified to do his job.

87. Defendant engaged in unlawful discrimination in violation of the ADEA by discriminating against Plaintiff due to his age.

88. Specifically, William Satore stated "we're surprised you haven't retired yet." Satore also stated "We brought in some new blood."

89. Another specific instance is when Harle told Plaintiff he was not being replaced by the newer, younger employee, Chris. However, Plaintiff was no longer in charge of maintenance, Chris would be.

90. Plaintiff was terminated after these comments were made.

91. Plaintiff did not participate in any action warranting a termination.

92. Plaintiff believes and therefore avers that his termination was due to discriminatory reasons on the basis of his age.

93. As a direct and proximate result of Company's discriminatory actions in violation of the PHRA, Plaintiff has lost wages and other economic benefits.

94. The foregoing misconduct by Defendants was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby requests that this Court enter judgement in his favor, and against Defendant, and award all damages available at law and in equity, in excess of arbitration limits, including:

a. Lost wages, compensatory damages, and punitive damages;

b. Full back pay for all regular hours and overtime hours not appropriately compensated to date;

c. Liquidated damages under the WPCL;

d. Pre-judgment and continuing interest;

e. All costs associated with the litigation, including Plaintiff's reasonable attorney's fees; and

f. All other such relief that may be deemed just and proper by the Court.

Respectfully Submitted,

/s/ David M. Manes
David M. Manes, Esq.
PA ID: 314661
**Manes & Narahari LLC**
301 Grant Street, suite 270
Pittsburgh, PA 15219
(412) 626-5571 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

## VERIFICATION

    I, Richard Frantz, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Richard Frantz